THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JERMAINE D. WHITE,<br>Plaintiff,<br>v.<br>UNITED STATES MARSHALS SERVICE et al.,<br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:23-cv-540-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Jermaine D. White, a federal detainee housed at the Salt Lake County Metro Jail, filed this *pro se* civil-rights action. The court now rules on several of the outstanding motions, including the motion of Salt Lake County Jail, Sheriff Rosie Rivera, and Dr. Todd Wilcox to dismiss the Complaint, and the Mr. White's motion for leave to amend his Section 1983 Claim.

The Complaint names the following defendants: the United States Marshals Service; the Salt Lake County Jail; Salt Lake County Sheriff Rosie Rivera; and the Jail's medical director, Todd Wilcox. Mr. White alleges three claims against these Defendants: "Preventing/Unavailable Grievance Exhaustive"; "Delaying Treatment of Serious Medical Needs"; and "Denying Treatment of Serious Medical Needs." Dkt. No. 1 at 5. He requests money damages to compensate him for personal injury and emotional distress. *Id.* at 10–11.

I.

The County defendants—Sheriff Rivera, Director Wilcox, and the County itself—move to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6).

A.

Dismissal is appropriate when the plaintiff has not pleaded facts, viewed in the light most favorable to the plaintiff, sufficient to show a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554–55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). "[T]he complaint must contain something more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2–3 (10th Cir. May 30, 2024) (unpublished) (quoting *Iqbal*, 556 U.S. at 678). What is more, "[f]acts, not conclusions, must be pleaded—'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

The court separately evaluates the sufficiency of each claim against each defendant. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating that a plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, Section 1983 cases often include a list of defendants, such as

> the government agency and a number of government actors sued in their individual capacities. . . . [I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249–50 (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any one of these individuals to ascertain what particular unconstitutional acts he or she is alleged to have committed." *Id.*

To be sure, the Mr. White proceeds *pro se*. The court thus "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). But a court may neither assume unasserted facts nor consider potential legal violations a plaintiff has not alleged. *See Association of Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (explaining that a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). And a plaintiff's *pro se* status does not entitle him to application of looser rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**B.**

The County Defendants rightly argue that Mr. improperly names the Jail as a Section 1983 defendant, when it is not an independent legal entity that can sue or be sued. *See Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (unpublished) ("Generally,

governmental sub-units are not separate suable entities that may be sued under § 1983."). All claims against the Jail are accordingly dismissed.

## C.

The County Defendants note initially that Mr. White does not specify whether he sues Defendants Rivera and Wilcox in their individual or official capacities. The Supreme Court has explained that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up). Conversely, suits against an officer in his or her individual capacity 'seek to impose individual liability upon a government officer for actions taken under color of state law.' *Id.*

One difference between suing a defendant in an official versus individual capacity has to do with asserting causation. To assert causation adequately against a defendant in that defendant's individual capacity, the plaintiff must allege facts showing that the defendant "set in motion a series of events that he knew or reasonably should have known would cause others to deprive [the plaintiff] of her constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (cleaned up); *see also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) ("When confronting individual-capacity § 1983 claims, our focus must always be on the *defendant*—on the injury *he* inflicted or caused to be inflicted, and on *his* motives." (cleaned up)). Conversely, to assert causation adequately against a defendant in that defendant's official capacity, the plaintiff must first identify an official policy or custom, and then establish that the challenged policy or custom was the "'moving force' behind the injury alleged." *Board of the County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997).

The County Defendants argue that they are not liable in their official capacities because Mr. White fails to allege sufficient facts to meet these causation requirements and thus state a Section 1983 claim against the County under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). And these Defendants further argue that Sheriff Rivera and Director Wilcox are not liable in their individual capacities because Mr. White fails to link them affirmatively to any alleged constitutional violations.

Mr. White's sole allegation regarding Sheriff Rivera, is that she "[h]a[d] the authority to authorize the policies and has been provided the responsibility to ensure the safety of every inmate in her jail— . . . medically, etc." Dkt. No. 1 at 3. And his only allegations regarding Director Wilcox are that "Wilcox had the authorization to communicate with [jail] doctors, U[niversity] of U[tah] hospital medical staff, and … the U.S. Marshal Service. He was clearly aware of how serious my illness was due to my records." *Id.* The court takes these allegations as true and regards them in a light most advantageous to the plaintiff. *See Ridge at Red Hawk L.L.C.*, 493 F.3d at 1177.

1.

If Mr. White intends to sue Defendants Rivera and Wilcox in their official capacities, his claims are actually against the County. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015). And to survive the motion to dismiss for failure to state a claim upon which relief may be granted, Mr. White would need to allege facts that spell out a County policy or custom carried out deliberately and "a direct causal link between" the policy or custom "and the deprivation of federal rights." *Brown*, 520 U.S. at 404.

Instead, Mr. White's only explicit allegation regarding any policy or custom in his entire Complaint is that Sheriff Rivera "[h]as the authority to authorize the policies and has been

5

provided the responsibility to ensure the safety of every inmate in her jail . . . medically, etc." Dkt. No. 1 at 3. This conclusory allegation does not identify any specific County policy or custom that was executed deliberately in a way that has a "direct causal link" to the "deprivation of [Mr. White's] federal rights" to adequate medical care.[1] To be sure, Mr. White does allege that various actions taken by particular officers violated his constitutional rights. But municipalities may not be held liable based solely on an employer-employee relationship with a claimed tortfeasor. *See Monell*, 436 U.S. at 689. And Mr. White fails to allege facts showing a "direct causal link" between the various actions he alleges violated his rights and any "formal regulation or policy statement," any "widespread practice … so permanent and well settled as to constitute a custom or usage with the force of law," any "decision of employees with final policymaking authority," any "ratification" of these actions by final decisionmakers, or any specific "failure to … train." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Indeed, the court understands the import of the Mr. White's allegations to be that at least some of these actions

---

[1] The closest that Mr. White comes to alleging a policy or custom is his discussion of his medical insurance coverage. *See, e.g.*, Dkt. No. 1 at 4 ("Dr. Flynn informed me [that the] prescribed treatment plan started while I was admitted in the hospital was critical to my health. Dr. Flynn also informed me that the U of U Hospital would not be able to continue my medication for my treatment plan due to the insurance provider of the S.L. Co. A.D.C."). But the court concludes that he has still failed adequately to allege a policy with a direct causal link to a violation of his federal rights, in part because it appears that he *was* able to see "a different doctor who could accept [the] insurance provider" and received the necessary treatment "6–8 weeks later." *Id.* It is difficult to discern whether Mr. White seeks to allege that the insurer's coverage decisions were (or reflected) some sort of policy or custom and, if he does, what that policy or custom was and who was responsible for it. It is also unclear on the face of the complaint what injury, if any, Mr. White suffered on account of this delay.

As explained below, the court grants Mr. White's motion for leave to amend the complaint. These allegations may be something that Mr. White wishes to develop further. If he chooses to do so, he must allege, with some specificity—even if only on information and belief—the scope and nature of the policy or custom at issue; who was responsible for that policy or custom; the federal right that policy violates, including the injury done to him; and the causal link between the policy and the violation.

were *not* consistent with the County's usual policies or practices, being out of line with the "many times [he] ha[d] provided samples" before, for example. Dkt. No. 1 at 9.

Mr. White thus fails to state a claim upon which relief may be granted against Defendants Rivera and Wilcox in their official capacities.

**2.**

The Supreme Court has held that to allege viable Section 1983 claims against government agents in their individual capacities, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. It follows that there is no *respondeat superior* liability under Section 1983. *See Id.*; *Brown*, 520 U.S. at 403. Supervisors can be held liable only for their own unconstitutional or illegal policies or actions, not for the tortious acts of those they supervise. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

To hold either Sheriff Rivera or Director Wilcox liable, Mr. White thus must allege "an 'affirmative link' between each [of these] defendant[s] and the constitutional violation, which requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind." *Tufaro v. Oklahoma ex rel. Bd. Of Regents*, 107 F.4th 1121, 1136 (10th Cir. 2024) (cleaned up). Mr. White fails to do so.

In *Robbins v. Oklahoma*, the Tenth Circuit noted that "complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." 519 F.3d 1242, 1249 (10th Cir. 2008). In *Robbins*, as here, the plaintiff filed suit against a list of defendants without specifying each defendant's alleged behavior that caused the alleged damages. *See Tufaro*, 107 F.4th at 1136. For this same reason, Mr. White's allegations against

Defendants Rivera and Wilcox fail. And, as in *Tufaro*, Mr. White's Complaint fails to give targeted, individual notice to Sheriff Rivera and Director Wilcox of which of their actions are alleged to have violated Mr. White's rights. *See id.* at 1136–37; *see also Robbins*, 519 F.3d at 1250.

Sheriff Rivera is alleged only to have had "authority to authorize the policies" and "responsibility to ensure the safety of every inmate in her jail . . . medically, etc." Dkt. No. 1 at 3. And Director Wilcox is alleged only to have been authorized to communicate with Jail doctors, University hospital staff, and USMS, while being "clearly aware of how serious Plaintiff's illness was." *Id.* These vague, conclusory allegations do not even state that Ms. Rivera and Dr. Wilcox engaged in activities adversarial to the Mr. White, let alone behavior affirmatively linked the elements of the claims Mr. White alleges.[2] The Motion to Dismiss is granted.

## II. MOTION TO AMEND COMPLAINT

Mr. White moves to amend the Complaint. In conjunction with granting this motion, the court screens the Complaint under its statutory review function, *see* 28 U.S.C. § 1915A, and orders Mr. White to file an amended complaint to cure deficiencies before further pursuing his claims.

### A. COMPLAINT'S DEFICIENCIES

The Complaint:

---

[2] Mr. White's allegation that Director Wilcox was "clearly aware of how serious my illness was due to my records" comes closest to alleging a constitutionally culpable state of mind, as required to assert an Eighth Amendment claim based on deliberate indifference. But even this allegation is merely conclusory. Without more, Director Wilcox's alleged access to Mr. White's medical records would at most support an inference that Dr. Wilcox *should have* known "how serious [the] illness was." But negligence is insufficient to violate a prisoner's Eighth Amendment rights. Instead, "knowing indifference" must be pleaded, and the court concludes that this allegation does not meet that high bar.

8

- possibly improperly alleges civil-rights violations on a *respondeat superior* theory;

- does not concisely link each element of claims of improper medical treatment to specific individually named defendants;

- does not properly affirmatively link each specific civil-rights violation to each named defendant;

- possibly inappropriately alleges civil-rights violations on the basis of denied grievances, *see Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009);

- possibly inappropriately alleges a constitutional right to a grievance process*, see Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished) ("[T]here is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process."); *Dixon v. Bishop*, 2020 U.S. Dist. LEXIS 41678 at *20 (D. Md. Mar. 11, 2020) ("[P]risons do not create a liberty interest protected by the Due Process Clause when they adopt administrative mechanisms for hearing and deciding inmate complaints[;] any failure to abide by the administrative remedy procedure or to process [grievances] in a certain way does not create a constitutional claim.");

- inappropriately names United States Marshals Service (USMS) as a *Bivens* defendant;

- does not indicate whether Mr. White sues Defendants in their individual and/or official capacities and evince an understanding of how this bears on county liability; and

- does not adequately specify factual allegations meeting the elements of municipal liability under which an attacked policy could be held unconstitutional.

## B. GUIDANCE FOR THE PLAINTIFF

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." These requirements are intended to guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Commc'ns Network, Inc. v ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991).

*Pro se* litigants are not excused from meeting these minimal pleading demands. "This is so because a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, it is improper for the court "to assume the role of advocate for a *pro se* litigant." *Id.* Thus, the court cannot "supply additional facts, [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

**1.** Mr. White should consider these general points before filing an amended complaint, some of which are addressed in more detail later:

    **a.** The revised complaint must be comprehensive and self-sufficient. It must provide all the information required without referencing the original complaint or assuming familiarity with the original complaint. *See Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998) (stating amended complaint supersedes original). Additionally, an amended complaint is not a work in progress. Once filed, it may not be altered or added to unless the defendants consent or the court grants a motion for leave to amend. Fed. R. Civ. P. 15.

      **b.**      Each defendant must be named in the complaint's caption, listed in the section of the complaint setting forth names of each defendant, and affirmatively linked to applicable claims within the "cause of action" section of the complaint.

      **c.**      The complaint must clearly state what each individual defendant—typically, a named government employee—did to violate Mr. White's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Mr. White should also include, as much as possible, specific dates or at least estimates of when alleged constitutional violations occurred.

      **d.**      Each cause of action, together with the facts and citations that directly support it, should be stated separately. Mr. White should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. *Robbins*, 519 F.3d at 1248. Courts are "particularly critical of complaints that 'mention[] no specific, time, place, or person involved in the alleged [claim].'" *Id.* (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 565 n.10 (2007)). After all, vague complaints are unfair to those being sued—"[g]iven such a complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . . . would have little idea where to begin.'" *Id*.

      **e.**      Mr. White may not name an individual as a defendant based solely on supervisory position. *See Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone does not support Section 1983 liability).

    **f.**  Denial of an administrative complaint to prison officials (called a 'grievance') without a further connection to the "violation of constitutional rights alleged by [a] plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

    **g.**  At the same time, the prison grievance process must be attempted before a suit can be filed in federal court. United States law provides that "[n]o action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2024). But Mr. White need not include the details of the prison's administrative grievance process in the amended complaint. Exhaustion of administrative remedies is an affirmative defense that must be raised by defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

  **2.**  Mr. White should consider these specific points before filing an amended complaint:

    **a.** *Respondeat superior*

  The Supreme Court has held that, when a plaintiff asserts Section 1983 claims against government agent in their individual capacities, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Consequently, there is no *respondeat superior* liability under Section 1983. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and Section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Brown*, 520 U.S. at 403. This means that government entities may be held liable only for their policies and customs,

as well as the decisions of their final decisionmakers; they may not be held liable based solely on the acts of their employees. *See Monell*, 436 U.S. at 689. Likewise, supervisors can be held liable only for their own unconstitutional or illegal acts or policies, and not based solely on the acts of those they supervise. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

### b. Inadequate medical treatment

The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). To state a cognizable claim under the Eighth Amendment for failure to provide proper medical care, "a prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Any Eighth Amendment claim must be evaluated under what are called objective and subjective prongs: First, "[w]as the deprivation sufficiently serious?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). That is, how *objectively* harmful was the lapse in medical care? Second, "[d]id the officials act with a sufficiently culpable state of mind?" *Id*. In other words, what was the prison official's own *subjective* knowledge of the alleged failure to provide adequate medical care?

Under the objective prong, a medical need is "sufficiently serious . . . if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citations & quotation marks omitted).

The subjective component requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corrs.,* 165 F.3d 803, 811 (10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

### c. Affirmative link

The amended complaint must allege *each* defendant's *personal* participation in the violation of the plaintiff's constitutional rights:

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*"); *Tonkovich v. Kan*[*sas*] *Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790–91 (10th Cir. 2019).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Id*. at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id*.

### d. USMS

The United States Marshall Service may not be validly sued in a *Bivens* action. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 486 (1994) (holding that federal agencies may not be sued in *Bivens* actions); *Pleasant v. Lovell,* 876 F.2d 787, 793–94 (10th Cir. 1989) (employees of agencies may not be sued in their official capacity in *Bivens* actions). The United States, as sovereign, is immune from suit unless it expressly consents to be sued. *United States v. Testan,* 424 U.S. 392, 399 (1976); *Bivens,* 403 U.S. at 410; *Ascot Dinner Theatre, Ltd. v. Small Business Admin.,* 887 F.2d 1024, 1027 (10th Cir. 1989).

### e. Official capacity versus individual capacity

The United States Court of Appeals for the Tenth Circuit explains:

> The Supreme Court has instructed that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up). By contrast, individual-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

*Coates v. Reigenborn*, Nos. 22-1339 & 22-1434, 2023 U.S. App. LEXIS 27456, at *9–10 (10th Cir. Oct. 16, 2023) (unpublished). *see also Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015) ("A suit against a government agent in his official capacity is treated as a suit against the government.").

15

One difference between suing a defendant in an official versus individual capacity has to do with alleging causation. To adequately assert causation against a defendant in an individual capacity, the plaintiff must allege facts showing that the defendant "set in motion a series of events that he knew or reasonably should have known would cause others to deprive [the plaintiff] of her constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (cleaned up); *see also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) ("When confronting individual-capacity § 1983 claims, our focus must always be on the *defendant*—on the injury *he* inflicted or caused to be inflicted, and on *his* motives." (cleaned up)). Conversely, to adequately assert causation against a defendant in an official capacity, the plaintiff must first identify an official policy or custom, and then establish that the challenged policy or custom was the "'moving force' behind the injury alleged." *Brown,* 520 U.S. at 404.

Mr. White should keep in mind too that "it makes no sense to sue a governmental entity in its individual capacity." *Jackson-Mackay v. McDonald*, 2023 U.S. App. LEXIS 6356 at *2 (10th Cir. Mar. 17, 2023). Finally, "there is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Monell*, 436 U.S. at 658).

### f. Municipal liability principles

Mr. White should study and incorporate these general principles in reframing the Complaint's municipal liability claim:

> In addition to a constitutional violation, a plaintiff must satisfy three elements to succeed on a *Monell* claim: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).
>
> An official policy or custom may include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them--of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* (quotations omitted). "For causation . . . the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quotations omitted). The policy or custom must be "the moving force behind the injury alleged." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quotations omitted). And "[a] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm [that] will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke v. Regalado*, 935 F.3d 960, 997–98 (10th Cir. 2019) (quotations omitted).

*Buchanan v. Turn Key Health Clinics, LLC*, 2023 U.S. App. LEXIS 28156 at *18-21 (10th Cir. Oct. 24, 2023) (unpublished).

### III. ORDER

1. For the reasons stated above, Docket No. 13, the County Defendants' Motion to Dismiss is GRANTED.

2. Docket No. 20, Mr. White's second motion for appointed counsel is DENIED for the reasons stated in the prior order denying a request for the court to seek *pro bono* counsel for Mr. White. *See* Dkt. No. 19 (denying the motion on the ground that Mr. White is ineligible because he is not proceeding *in forma pauperis*).

3. Docket No. 21, Mr. White's Motion to Amend his complaint is GRANTED on the condition that Mr. White must within thirty (30) days file a document entitled "Amended Complaint" that does not refer to or include any other document and that cures the identified deficiencies in Docket No. 1, the original complaint.

      **a.**      The Clerk's Office shall mail the Mr. White a *Pro Se* Litigant Guide with a blank-form civil-rights complaint which the Mr. White must use to pursue an amended complaint if desired. If Mr. White fails to cure the above deficiencies in a timely manner as instructed in this Order, this action will be dismissed without further notice.

      **b.**      The amended complaint shall not include any claims outside the dates and allegations of transactions and events contained in the Complaint, filed August 18, 2023. The court will dismiss any such new claims or outside allegations. If Mr. White wishes to raise other claims and allegations, he may do so only in a new complaint in a new case.

      **c.**      Extensions of time are disfavored, though reasonable extensions may be granted. Any motion for time extension must be filed no later than **fourteen days** before the deadline to be extended.

      **4.**      Docket No. 17, Mr. White's Motion to Subpoena Defendants is DENIED because there is no valid complaint on file as of the issuance of this Order; thus, this discovery request is premature. Without Mr. White's prompting, the court will direct discovery as deemed necessary after screening an amended complaint.

      **5.**      Mr. White must inform the court of any address change and timely comply with court orders. *See* D. Utah Civ. R. 83-1.6(b) ("An unrepresented party must immediately notify the Clerk's Office in writing of any name, mailing address, or email address changes."). Failure to do so may result in this action's dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b).

      **6.**      No direct communication shall take place with any judge. All relevant information, letters, documents, and papers, shall be labeled with the case number and directed to the Clerk's Office.

7.      Mr. White must observe this District of Utah local rule: "A party proceeding without an attorney (unrepresented party or *pro se* party) is obligated to comply with: (1) the Federal Rules of Civil Procedure; (2) these Local Rules of Practice; (3) the Utah Standards of Professionalism and Civility; and (4) other laws and rules relevant to the action." DUCivR 83-1.6(a).

**IT IS SO ORDERED.**

Dated this 31st day of March, 2025.
BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge